All right. We'll wait till everyone leaves. Okay. I think we're ready. So we will call the second appeal of the day. That is appeal number 22-2404, Todd Reardon, Sr. v. Jesse Daniel. Good morning, Mr. Reardon. Yes? Good morning, Your Honor. Attorney Todd Reardon, Jr. here on behalf of the Plaintiff Appellant. May it please the Court. Of course. Anytime you're ready, you may begin. Thank you, Your motion to dismiss based on the District Court alleging that there was no viable state of no viable claim from the Plaintiff Appellant's complaint going in, excuse me, going in no particular order. I would begin with the basis of the Coles County Board of Illinois and Stan Metzger, specifically with regards to Mr. Metzger initially withholding an election sign of Todd and Reardon's by a candidate. Mr. Reardon, I'm sorry, before you go too far, I just want to confirm, based on the briefing, it does not look like you are appealing the District Court's ruling as to Mr. Metzger in his individual capacity. You are only appealing the Monell against the Board. Is that correct? Your Honor, I believe the two intertwine. Well, they're separate and they're separate elements and they were separate claims. So I didn't see anything in your brief arguing against the District Court's ruling on count five as to him individually. So. Yes, Your Honor. Again, I believe with regards to the ratification of Mr. Metzger's investigation of himself, this is what inherently intertwines the Monell claim to his actions in that the Coles County Board did in fact ratify. And I understand you are appealing the ratification issue against the Board. Yes. I just didn't see anything against Mr. Metzger individually in terms of your appeal. I believe Mr. Metzger's actions before the Board, Your Honor, do constitute its own separate action and I believe that my brief did allege that against Mr. Metzger as well. But if necessary, Your Honor, I would perhaps point to the plain error issue of the matter. Again, I would still reiterate that the investigation by Mr. Metzger of himself before the Coles County Board was ultimately the Monell violation, as well as the 1983 violation by Mr. Metzger himself. This is I also have a question regarding Mr. Metzger because, of course, not every action of a public official or I guess not every action that a public official takes is one taken under color of law for purposes of a Section 1983 claim. How do we know that Mr. Metzger was acting as a member of the County Board as opposed to as a private citizen or an official of the local Republican Party when he removed the campaign sign? Your Honor, it's the in tandem action of removing the sign but then also presenting that issue before the County Board as if it were part of its own agenda as a municipal corporation. In effect, Your Honor, Mr. Metzger, maybe by taking the sign alone, was not acting under color of law. But when he decided to present his actions before the County Board as something to be approved of or something to be heard on the agenda of the Municipal Board, that is when he then involved the Board and himself under color of law acting as a County Board official to enact some type of almost quasi-ordinance in effect claiming that what his actions were could not be construed as criminal. And so by presenting his actions to the Board as something to be approved of, that is what ultimately the Board ratified his investigation of himself in taking that sign. But there was no allegation that the Board actually approved Metzger's actions, rather that it simply accepted his explanation that he removed the sign by mistake and determined that no further action on the Board was warranted. And there wasn't. I didn't, maybe I missed it, but was there an allegation that the Board harbored an improper motive in doing so? No, Your Honor. I think by having at least the plausible deniability of claiming that it was an accident, Mr. Metzger in effect gave the Board a pass to approve of his of course insist upon their innocence as Mr. Metzger did. And so when the District Court focused on Mr. Metzger's answer as, I believed I was acting under mistake of fact, just by hearing that, just by ratifying his desire to put this matter before the Board as if it were part of its agenda, that ratification of his investigation is ultimately the Monell claim in 1983 claim. But ratification of the investigation is not enough under the law. The Board has to ratify the decision as well as the basis for it, the alleged improper basis for it. But when Metzger went before the Board, he said, I made a mistake, which is not an improper basis. And that's what the Board forgave him for, not because he went in and said, I took the sign because it's of a take it out. I believe the improper basis, Your Honor, was presenting it before the Board as an issue that it could handle or that it could somehow have any opinion. How could that be ratification? Because the Board's not deciding anything with respect to a motive or a reason for doing something. I believe the Board did determine that his criminal investigation of the Board's authority. But despite that, by just acting in fruition with Mr. Metzger, giving it any even appearance as if this could somehow negate an actual criminal investigation of his acts, that was, again, going further back from the district court, not so much what Mr. Metzger claimed to be his basis, but just by the Board allowing him to present it as this is the results of what I've determined for myself. I have determined that me taking the sign was not criminal, and I would ask that the Board approve of that and confirm that that is at least basis sufficient for me to continue on the Board. So for that reason, Your Honor, I would maintain and insist that the ratification did occur, not of the presented issue of I made a mistake, but rather I have entertained an investigation, and I am presenting that investigation to the Board for its... What investigation? The investigation... What, that Metzger found out that the resident had given permission? Mr. Metzger had determined that he had not criminally or committed any criminal conduct, Your Honor. He did not have the permission of the resident. He had taken the sign. The resident had alleged that criminal conduct had occurred, and Metzger had presented this issue to the Coles County Board as a matter, again, to be heard on its agenda, which it did place on its agenda, and it did, in some format, approve of his investigation of himself. Did he place it on the agenda? He did, Your Honor. If that's your theory of ratification, that it's based somehow on a criminal investigation theory, how is that a violation of the First Amendment? What you have pled is that this is a violation of the First Amendment because he took the sign for inappropriate reasons, and the Board ratified him taking the sign and the inappropriate reasons. In that he was interfering with Todd M. Rubin's right to run for election, Your Honor. But how is a ratification of a criminal investigation a violation of the First Amendment? By essentially construing that him taking these signs, by him interfering with Mr. Rubin's right to run for election, could be absolved by the Board's determination that, at least whatever they could determine, no ethical violation had of any potential criminal investigation by overlaying some kind of, again, color of law that Mr. Metzger had in fact presented something before the Board that was... Could we go on to another issue, please? Yes, Your Honor. In what sense did the photo with Chief Taylor and the endorsement on the Police Department Facebook page deprive Mr. Reardon of his own First Amendment rights? I appreciate the fact that city resources may have been or were improperly used, but nothing prevented Mr. Reardon from obtaining and promoting his own endorsements, did it? No, Your Honor. However, I believe what's necessary for the context of this fact then, I believe there's still ample room to allege that when you are interfering with the right to run for election, that especially in a zero-sum situation where you have one candidate versus another, when one candidate has been given the patronage or have been given the approval of a municipal agency, the chief of police of a police department, which the District Court did concede very likely was official misconduct. When that is being used to the benefit of one candidate over another in a two-way race, it cannot really be understood in any other way but to be essentially restricting the First Amendment rights of the second candidate from being able to run free of government interference. Well, wait. In terms of equal protection, did Mr. Reardon ask the Mattoon Police Department to remove the endorsement from its Facebook page or did he ask the city to give equal treatment to his own endorsements? No, Your Honor. Mr. Reardon did not make that request, and in light of, again, the fact that Mr. Jason Taylor likely committed official misconduct, he would not have requested that. But violation of a state ethics law is not an equal protection violation. In itself, no, Your Honor. I believe, however, again, in the context of this specific case where you have only two individuals running, to say that one side now has the instruments of local government somehow benefiting them solely, it can't be construed in any other way than as a restriction on the other side's ability to run. And I would concede if perhaps it were a three-way race or something of that nature, it could be more nebulous to say whether this action directly benefits one candidate to the detriment of another, so much so that it creates government interference. But here, where you have only two candidates and a police department, or at least the chief of police acting as chief of law ascribing to one candidate that we are supporting this candidate, this municipal agency is supporting this candidate, and is providing him funds, resources, office locations that the other candidate does not have access to because the other candidate is not requesting someone to commit official misconduct. Mr. Reardon, I want to, in the time remaining, turn to a issue. You've brought a claim based on the documents that were obtained and subpoenaed from Facebook, and part of your claim is based upon the release of those documents. Looking at the record in the case, it's unclear to me, has Judge O'Shaughnessy ruled on the release of the subpoenaed documents that were received? No, Your Honor. The documents have yet to be released. If the state court hasn't ruled on that issue yet. Your Honor, if I understand your question, I believe the issue with both the judge and, I would say, separately, the original subpoena that was issued by the state's attorney's office, with respects to the Younger Doctrine, Your Honor, I don't believe it could be applicable at all to the original issuance of the subpoena just in light of the fact that first, one could allege that there was no state court proceeding ongoing. It was simply... But before we even get there, I'm trying to figure out what your claim is and if it's ripe. If you're bringing a claim based on the judge's ruling on the release of the documents, the judge hasn't ruled on that. In essence, Your Honor, we are asking for injunctive relief against Judge O'Shaughnessy for the returning of those materials to plaintiff appellant. He hasn't ruled though. There's something pending before him. You requested the release, but he hasn't said one way or the other. Yes, Your Honor. I think, again, going back to why this is still appropriate for federal intervention is in light of the fact that, one, how the subpoena came to be issued was during the ongoing campaign between Jesse Danly and Todd M. Reardon in which the Younger abstention does point out a bad faith exception as outlined in the Collins v. County of Kendall that the district court relied on. In that matter, Your Honor, it was admittedly a one-to-one relation of political activity being prosecuted directly for that basis. Here we have a slightly roundabout method in which, rather than going directly after the individual for what's obviously their right to seek election, a roundabout method of simply prosecuting the individual on some other basis, despite that same individual being your political opponent, speaks directly to the issue of Collins v. County of Kendall as far as the killing speech aspect of the bad faith exception. Here we have, and I apologize, Your Honors, I've asked to reserve. You'll get it, but go ahead. Thank you, Your Honor. With regards to the bad faith exception, we have, I think, a very similar parallel, despite the district court's ruling to Collins v. County of Kendall, because it is, in fact, a chilling effect of prosecuting your political opponents as you are in an ongoing campaign against them. Can you hold on for a minute, because now I'm a little, you know, did Judge O'Shaughnessy ever release the subpoena materials to the officials conducting the investigation? To no one, period? They were not released to anyone, Your Honor. Well, now could there be a potential mootness issue? Your Honor, I think with regards to the original subpoena that was issued, and I would note, as alleged, issued without any underlying case, without any original search warrant ever issued before it, it was simply sought out as it's not as compulsory process, but as a quasi search warrant by the state's attorney's office, or at least acting under a color of law as the state's attorney's office by Jesse Danley. Because of that, Your Honor, I think the invasion of private materials are then taken, or excuse me, sent by Facebook honoring the subpoena, and then withheld by my client in now the, excuse me, the Vermilion County Circuit Clerk's Office. I think we need you to, you know, wrap up. Excuse me, Your Honor. I'm going to give you, you know, some time because we've peppered you, but still. Just in essence, Your Honor, addressing the last factor, again, there is a Fourth Amendment violation that does fall under the bad faith exception here because we don't have a valid case. We have a subpoena that doesn't exist in a valid case, and then we also have that subpoena being issued under color of law by the political opponent of the same, of that individual, Mr. Reardon. So I believe it speaks directly to the bad faith exception considered in Collinsville County of Kendall, Illinois, with regards to chilling the speech of Mr. Reardon and his ability to seek election without being prosecuted by his opponent. Thank you, Your Honor. Thank you very much. Okay. Good morning, Mr. Drinkwine. Yes. Good morning, Your Honor. Yes. Anytime. May it please the court and good morning, counsel. Chris Drinkwine on behalf of Coles County, Coles County State's Attorney, Jesse Danley, and Board Member Stan Metzger. I'll also be presenting argument this morning on behalf of the city of Mattoon and its former police chief, Jason Taylor, as the city defendants and the county defendants have filed a joint brief in this case. The district court... Do you know the status of the Facebook records or is that question better for your opponent? Well, the... Or your co-counsel, I should say. My understanding is the same, but I would also remind the court that the allegations in the complaint are what's important in this case. We're on 12B6 and there's no allegations in the complaint that that has been ruled on either. And a couple of times, counsel went beyond the allegations of the complaint, but I'll come back to that. But my question is if there's... If they violation is based on the state court ruling on it and turning it over, how is that ripe? Well, he's asking for injunctive relief. I mean, he's asking... But it still has to be right for injunctive relief. Correct. And from the perspective of the state's attorney, the younger abstention ruling by the district court, and the assistant attorney general will address momentarily the injunctive relief against Judge O'Shaughnessy. The district court dismissed three First Amendment claims and three equal protection claims regarding the photo incident. On appeal, plaintiff challenges only the equal protection claims being dismissed, which is not surprising considering that the that itself is protected by the First Amendment. The district court correctly determined that plaintiff failed to state equal protection claims because the photo incident allegations do not fit into the interests of political candidates that are protected by the equal protection clause. Specifically, there's no allegation that Danley compelled or coerced Chief Taylor to pose for the photograph. If he had, that would have violated equal protection under the Shakeman v. Democratic Organization of Cook County case, which explicitly distinguishes between compelled and voluntary political support by public employees. There's also no... Forgive me. Suppose Mr. Reardon had obtained endorsements from other Mattoon officials, and once he saw Chief Taylor's endorsement, he asked the city to post his own endorsements on its Facebook page, and the city refused. Might he then have had a legitimate First Amendment or I hesitate to speculate on something like that where there's no such allegation in the second amended complaint, which was Mr. Reardon's third attempt to state a claim under the equal protection clause or the First Amendment, but if I were to hazard a guess, there could be an equal protection problem, I suppose, if they treated them differently with respect to access to their Facebook page. And with regard to the equal protection claim, the district court not only determined that Plaintiff failed to state a claim, but that even if he had, for purposes of argument, Taylor and Danley were entitled to was not clearly established at the time of the alleged violation. Significantly, Plaintiff advances no qualified immunity argument before this court on appeal, and therefore he has necessarily not identified any case authority clearly establishing an equal protection prohibition against one public official endorsing another by posing for a photograph together. And in fact, the law is the opposite. For example, in Gonzales v. Madigan, this court called into serious question its previous decision in Smith v. Cherry, which held that a political deceit in the form of stalking horse candidacy could potentially violate equal protection. Now the court didn't overrule Smith v. Cherry, but it called it a bolt from the blue and held that it shouldn't be extended further. So this court's decision in Gonzales v. Madigan makes it sufficiently clear that a candidate's mischief or shady strategy or tactics during an election will rarely, if ever, violate the equal protection clause of the 14th Amendment. This court wrote, the Constitution does not authorize the judiciary to upset an election outcome or to penalize a petition for employing a shady strategy that voters tolerate. The court in Gonzales also quoted an earlier case stating that any effort by the judiciary to stop one politician from taking steps that injure another politician would do more to violate the First Amendment than to vindicate the equal protection clause. Defendants respectfully submit that there is nothing shady or mischievous about one public official endorsing another and demonstrating that endorsement by posing for a photograph with the candidate. It certainly doesn't rise to the level of shadiness or mischievousness in a stalking horse candidacy or the placement of stooge candidates on a ballot to split the Hispanic vote as was alleged in the Gonzales v. Madigan case. So not only is there no authority demonstrating that the photo incident violated the equal protection clause, Gonzales v. Madigan establishes that plaintiff had no such right. Having not made a qualified immunity argument with respect to the photo incident, it appears that he does argue that plaintiff does argue that Chief Taylor's decision to pose for the photo with state's attorney Danley was a decision by a final decision maker for the city of Mattoon such that the city can be liable under a Monell theory. But this argument fails because there's no allegation in the Second Amendment complaint that Chief Taylor was a final decision maker for the city of Mattoon regarding the endorsement of political candidates. And even if he was, there's no underlying constitutional violation that occurred as a result of the photo incident. So the district court's order dismissing the equal protection claims against Danley, Taylor, and the city of Mattoon was entirely correct and should be affirmed. On the sign-stealing incident, Your Honor asked the question about the individual claim and the Monell claim. And I think we heard a concession there at the end of that part of the argument, but the Monell claim is the only one being argued by plaintiff. And specifically on page 13 of his appellant's brief, the plaintiffs wrote that when defendant Stan Metzger first converted and concealed the aforementioned sign, he may not have been acting under color of law, much like the scenario in Wilson. And Wilson beat prices on all fours. There was no state action by Metzger. And because there was no underlying First Amendment violation, there can be no Monell liability against the city of Mattoon. Plaintiff does make the argument that adopted by the Coles County Board. But the district court found correctly determined that plaintiff failed to state a claim under a ratification theory because there was no allegation in the Second Amendment complaint that the county board actually approved Metzger's conduct and no allegation that the board actually approved any motivation on Metzger's part to violate plaintiff's constitutional rights. Instead, plaintiff has specifically pleaded that the board further action was required because he made a mistake, not because he violated his constitutional rights. Plaintiff has not explained on appeal why that analysis was wrong. So for those reasons, the district court correctly dismissed the First Amendment claims alleged against Stan Metzger and Coles County based on the sign stealing incident. The injunctive relief sought in count two against state's attorney Danley from receiving the subpoenaed information was dismissed by the district court on younger abstention grounds. This court reviews that decision de novo. It's important to note, though, with respect to the procedural posture of the case being the 12B6, that there's no allegation in the Second Amendment complaint that plaintiff had announced his candidacy for state's attorney or filed a petition for nomination as of October 10th, 2019, the date that the subpoena was issued. And that allegation would be necessary in order for it to be plausible that that subpoena was I see my time has expired. For all these reasons, the city of Mattoon defendants and the county of Coles defendants respectfully request that this court affirm the judgment of the district court. Thank you very much. Thank you, Mr. Drinkwine and Ms. Schoenever. Good morning, Your Honor. Hello again, Your Honor. Good morning and may it please the court. I'm Assistant Attorney General Kaitlyn Schoenever and I represent the defendant appellee, Judge Thomas Judge O'Shaughnessy. I would first like to note that the district court below found that the judge was entitled to absolute judicial immunity because Mr. Riordan had failed to allege that declaratory relief was unavailable or that a declaratory decree had been violated. On appeal, Mr. Riordan largely fails to address that argument or that decision from the district court at all. Instead, in a very brief assertion in the summary of the argument, just simply asserting that no declaratory relief was available. But in his opening brief and in his opening arguments to this court, Mr. Riordan has not challenged or given any reason to for this court to disturb the district court's determination here dismissing the claim as to this judge. To answer the Your Honor's question about the status of the Facebook documents, it is my understanding that those have not been released yet. That is my understanding as well. It seemed odd to me because the motion to quash was ruled on and appealed. So if there was still an open question about turning them over, how it was final for appeal purposes. Your Honor, the order denying the motion to quash was appealed and the appellate court decision that does not specify whether it is an appealable order or an interlocutory order. There is case law in Illinois that says that it can be a final and appealable order when an individual is appealing an order denying a motion to quash. So that is certainly a possibility, though it was not specified or stated in the Illinois appellate court decision. So should we address that in terms of Rooker Feldman if that's final rather than Younger? Well, certainly to the extent that there are any other matters pending, which it appears there may be to the extent that these documents have not been released and there's been any request for them to be released, then Younger would be the appropriate abstention doctrine here to allow the state court to complete litigating the matter and matrix rulings and also to allow Mr. Reardon, to the extent that he feels he may need to, file any appeals in the Illinois appellate court in the first instance. But aside from that, if the case is over, which I would note in the response to the judge's motion to dismiss, that's district court doc 4 at page 2, or I believe 40 at page 2. In the response, Mr. Reardon argued that the judge found that the given that the state's attorney had not requested the release. And so to the extent that the matter is at this point concluded, then it would be final and Rooker Feldman would be implicated because to the extent that Mr. Reardon is seeking the release of those records, he would need to appeal that decision through the Illinois appellate court instead of turning in the first instance to the federal district court. I would also note that specifically as to the determination that absolute judicial immunity applied here, as the district court noted, Mr. Reardon did not allege or explain that there was no declaratory relief available to him here. And section 1983 after its amendment in 1996 does require that before injunctive relief is available, a declaratory relief must be unavailable or there must be an allegation that a declaratory decree was violated, which was not present here in any of the allegations. Don't we have waiver here on this, this whole argument? The argument in this case, in this issue is all perfunctory. Oh, waiver as far as the Mr. Reardon's challenge to this? Yes. Yes, that is correct. There's a single, in the summary of argument, there's a single assertion that declaratory relief was regarding the dismissal of the judge. The plaintiff raises what appears to be a new argument on appeal, which as I understand, it's raised for the first time on appeal. Correct. Yes. Well, you can't do that. That is correct, your honor. You cannot do that. And in any event, none of those arguments go to the reasoning underlying the district court's decision. For all those reasons, we ask that this court affirm. Thank you. Thank you. Thank you very much, Mr. Reardon. Give Mr. Reardon three minutes because it really wouldn't be fair otherwise. Go ahead. Thank you, your honor. Just briefly addressing counsel's points in order. With regards to the equal protection claim, your honor, I think counsel stated somewhat clearly that if the candidates had been treated differently with access to government resources, access to government offices, and ultimately, I guess you could say government approval, at least acting under colored law as such. And that's exactly what happened here, was that in fact, one candidate did receive the benefits of a police department's resources, a police department's access to their privately controlled Facebook page, to their office, to their ability to proliferate that. That is discriminatory, your honor. That is, in essence, Mr. Reardon having to run for election against ultimately the municipal government in some form, or at least in as much as that government is providing the other candidate in a two-sided race with governmental resources that Mr. Reardon does not have access to, and like previously stated, would not have requested just in light of how egregious that would be. Also, pointing to counsel's reference to the qualified immunity of Jason Taylor, relying on the district court's ruling that there was no clearly established basis that Mr. Taylor would have reasonably known that he was violating Mr. Reardon's rights. Well, Mr. Jason Taylor did know, or at least should have known, that he was committing official misconduct. He should have known that he was potentially committing criminal conduct, and that he was committing this criminal conduct in an ongoing election to the benefit of one So, although there may not be a close parallel, just perhaps because there's not many individuals that would have, for lack of a better term, risked their own necks for someone else to such degree, it does nonetheless remain a viable cause of action that they are not immune and that they should have seen a reasonable basis of violating Mr. Reardon's rights by committing crimes in an ongoing election to the benefit of one candidate over another. With regards to Stan Metzger, and I realize I am running short on time, I would just point out that it is in fact the opposite of the president of Wilson v. Price in as much as Wilson v. Price, that individual never went to the board, never went to the legislative capacity of his local county board, excuse me, I think it was a city board, for that action. And in Wilson v. Price, of course, it was, I believe, battery. Here it's theft. However, it's chronologically opposite, just in that Mr. Metzger went to the board for approval of his actions. The alderman did not do that. And that would be the end of my time. Thank you, Your Honor. And we thank you. And of course, we thank all of our lawyers, Mr. Drinkwater and Ms. Chenoweth. And the case will be taken under advisement.